# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HORIA CRETAN, | : | CIVIL NO. 3:24-cv-00097 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| NEWPORT TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

## I.  Introduction.

Plaintiff Horia Cretan ("Cretan") is the owner of residential and commercial property in Newport Township, Luzerne County, Pennsylvania.  Cretan alleges that his property was damaged by fire because the defendants,[1] Newport Township ("Township") and Pennsylvania American Water Company's ("PAWC"), failed to properly winterize and maintain nearby fire hydrants.  Cretan is proceeding on a four-count amended complaint bringing 42 U.S.C. § 1983 and Pennsylvania common law claims. *Doc. 4.*  The Township answered the amended complaint. *Docs. 9, 31.*  PAWC, however, filed the currently pending motion to dismiss. *Doc.*

---

[1] Although Cretan originally included claims against Luzerne County in the amended complaint, he has since voluntarily dismissed those claims. *Docs. 4, 24.*

*22.*  For the reasons set forth below, we will grant in part and deny in part the

motion to dismiss.

## II.  Background and Procedural History.

Cretan began this action by filing a complaint on January 19, 2024. *Doc. 1.*

Cretan filed an amended complaint on March 18, 2024.[2] *Doc. 4.*  In the amended

complaint, Cretan asserts claims against three defendants: (1) PAWC; (2) Luzerne

County; and (3) the Township. *Id.*  Only two defendants remain, however, because

Cretan voluntarily dismissed his claims against Luzerne County pursuant to

Federal Rule of Civil Procedure 41(a)(1)(A)(i) after Luzerne County filed a motion

to dismiss. *Docs. 21, 24.*

The Township first answered the amended complaint and filed a crossclaim

against PAWC. *Doc. 9.*  But on July 8, 2024, the Township filed an amended

answer which no longer asserted a crossclaim against PAWC. *Doc. 31.*

Meanwhile, on April 2, 2024, PAWC filed the instant motion to dismiss and

a brief in support. *Docs. 22–23.*  After requesting and being granted an extension

of time to respond, Cretan filed his brief in opposition. *Docs. 25–27.*  PAWC

---

[2] In a footnote in its brief, PAWC notes that Cretan did not seek leave to amend his complaint. *Doc. 23* at 6.  Neither PAWC nor the Township, however, raised timely objections to Cretan's filing of the amended complaint, and there is no apparent prejudice to the parties by proceeding given that PAWC timely moved to dismiss and the Township timely answered. *Docs. 9, 22.*

requested additional time to reply, which we granted, and PAWC filed its reply on July 24, 2024. *Doc. 35*.

The following facts are taken from Cretan's amended complaint. Cretan owned three adjacent properties (collectively, the "Property") located in the Township.[3] *Doc. 4* at ¶¶ 9–11. He also lived on the Property. *Id.*

Cretan alleges that the Township has a contract with PAWC wherein PAWC provides water to the Township's residents and maintains and supplies water to fire hydrants. *Id.* at ¶¶ 5, 12. On or about January 13, 2022, Cretan believes that the Township and/or PAWC took steps to "winterize" the fire hydrants surrounding his properties so that they did not freeze or malfunction in cold temperatures. *Id.* at ¶¶ 15–16. But, according to Cretan, some fire hydrants surrounding his property were either not winterized or were not properly winterized. *Id.* at ¶ 18.

On or about January 22, 2022, the Property caught fire, requiring the response of multiple fire departments. *Id.* at ¶¶ 22–23. Cretan avers that the nearby fire hydrants either malfunctioned, froze, or had low water pressure, and as a result the responding firefighters were unable to quickly distribute water to contain the fire. *Id.* at ¶¶ 24–25. As a result, a portion of the Property was destroyed, and

---

[3] The addresses of the properties are: 1010 W. Main Street, 1010 ½ W. Main Street, and 1012 W. Main Street, Nanticoke, Pennsylvania 18634. *Doc. 4* at ¶ 9.

Cretan lost approximately $90,000 in personal property located inside. *Id.* at ¶¶ 28–29.

Cretan's amended complaint contains four counts against the defendants. *Doc. 4.* Cretan brings three claims for violations of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983: (1) a due process claim against the Township and PAWC; (2) an equal protection claim against the Township and PAWC; and (3) a procedural due process claim against the Township. *Id.* Cretan's fourth claim is brought against the Township and PAWC for negligence pursuant to state law. *Id.*

For relief in each count, Cretan seeks "compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper." *Doc. 4* at ¶¶ 51, 59, 66, 75.

## III. Pleading and Motion-to-Dismiss Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual

4

allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider [ ] the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. Of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should

6

assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).


## IV.  Discussion.

PAWC argues that we should dismiss the claims against it for three reasons.

*Doc. 23.*  As to the Section 1983 claims in Counts I and II, PAWC argues that it is

not a state actor.  PAWC further argues that even if it were a state actor, Cretan has

insufficiently pleaded his due process and equal protection claims in the same

Counts.  And as to Cretan's state law negligence claim, PAWC argues that we

should decline to exercise supplemental jurisdiction over it.  Because, as discussed

below, we agree with PAWC that is not a state actor, we only address the PAWC's

state actor and supplemental jurisdiction arguments.


### A. State Actor Requirement.

PAWC makes three arguments concerning its status as a state actor.  It

argues that Cretan failed to explicitly plead its status as a state actor, instead

alleging that it is a "business corporation." *Doc. 23* at 11–12; *Doc. 4* at ¶ 7.  PAWC

also argues that PAWC fails the nexus test for distinguishing between state action

and private action as set out by the United States Supreme Court in *Jackson v.*

*Metro. Edison Co.*, 419 U.S. 345 (1974). *Id.* at 11.  Lastly, PAWC argues that we

should follow the leads of other district courts in this circuit which have held that

utility companies, including instance PAWC specifically in one instance, are not

state actors under § 1983. *Id.*  In response, Cretan argues that PAWC meets the

nexus test, that the district court cases cited by PAWC are distinguishable, and

that, if necessary, he should be granted leave to amend the complaint to explicitly

plead that PAWC is a state actor. *Doc. 27* at 6–11.

Cretan brings Fourteenth Amendment due process and equal protection

claims against PAWC pursuant to § 1983, which "imposes civil liability upon any

person who, acting under the color of state law, deprives another individual of any

rights, privileges, or immunities secured by the Constitution or laws of the United

States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

Section 1983 "does not create any new substantive rights but instead provides a

remedy for the violation of a federal constitutional or statutory right." *Id.*  To

establish a claim under Section 1983, the plaintiff must establish that he was

deprived of a federally protected right and that this deprivation was committed by a

person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d

314, 319 (3d Cir. 2005).

The requirement of state action is a "threshold issue" in cases brought under

§ 1983, *Bailey v. Harleysville National Bank & Trust*, 188 F. App'x. 66, 67 (3d

Cir. 2006), because "there is no liability under [Section] 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). The phrase "under color of law" used in Section 1983 is parallel in meaning to "state action" as used in the Fourteenth Amendment. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)); *see also Bailey*, 188 F. App'x. at 67 ("To show that the defendant acted under color of state law, a litigant must establish that the defendant is a 'state actor' under the Fourteenth Amendment") (citing *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 169 n.1 (3d Cir. 2004)). Under this standard, the state must be "responsible" for the plaintiff's alleged constitutional injury. *Id.* at 1141–42. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Bailey*, 188 F. App'x. at 68 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974)).

The Third Circuit has discerned three broad tests "generated by Supreme Court jurisprudence" to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a

joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (quoting *Mark*, 51 F.3d at 1142).  While PAWC references only the third broad test, we will analyze Cretan's allegations under all three to determine whether PAWC is a state actor.

The inquiry under the first test "is whether the function performed has been traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (internal quotations omitted).  This test imposes a "heavy burden" that is rarely met. *Kach*, 589 F.3d at 648; *see also Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001) (holding that the first "test imposes a rigorous standard that is rarely satisfied").  Functions held to be the exclusive prerogative of the state include administration of elections of public officials, *Terry v. Adams*, 345 U.S. 461, 468–70 (1953), operation of a company-owned town, *Marsh v. Alabama*, 326 U.S. 501, 505–09 (1946), "the forcible removal of children from their homes," *Est. of Adam Earp v. City of Phila.*, No. 96-CV-7141, 1997 WL 255506, at *2 (E.D. Pa. May 7, 1997), and "internal affairs investigations of police officers," *Beu v. City of Vineland*, No. 20-CV-02510, 2020 WL 7418007, at *11 (D.N.J. Dec. 18, 2020).

The second test is "whether the private party has acted with the help of or in concert with state officials." *Kach*, 589 F.3d at 646.  Under this test, "courts must ask first whether the claimed constitutional deprivation resulted from the exercise

10

of a right or privilege having its source in state authority; and second, whether the private party charged with the deprivation could be described in all fairness as a state actor." *Mark*, 51 F.3d at 1143 (3d Cir. 1995) (internal citation and quotations omitted).  Examples of state action under this test include an employee conspiring with a police officer to racially discriminate against a patron, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970), and a private party's joint participation with state officials to seize a disputed property, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982).

The third test is "whether the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646.  Under this test, "state action will be found if there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action may be fairly treated as that of the State itself." *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 76 (3d Cir. 1991) (emphasis in original and internal quotation marks and citation omitted).  In *Burton v. Wilmington Parking Authority*, the United States Supreme Court found, under this test, that a restaurant that practiced racial discrimination and was located within a public parking garage was a state actor because the state had many "obligations and responsibilities" regarding the operation of the restaurant, "mutual benefits" were conferred, and the

restaurant operated "as an integral part of a public building devoted to a public parking service." 365 U.S. 715, 724 (1961). The Supreme Court later applied the *Burton* test to a high school athletic association in *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001), finding state action because a "great majority of the association's member schools were public, representatives of the schools acting in their official capacities selected members of the association's governing bodies, [and] state officials also sat on those bodies in an ex officio capacity." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 172–73 (3d Cir. 2004) (citing *Brentwood*, 531 U.S. at 298–300). Moreover, "the association was largely financed by gate receipts from member-school tournaments, and association employees participated in the state retirement system." *Benn*, 371 F.3d at 172–73. The mere performance of public contracts, however, does not transform the acts of private contractors into state actors

Applying these legal guideposts, we find that PAWC is not a state actor under any of the three broad tests.[4] Cretan does not allege that PAWC exercises powers that are traditionally the prerogative of the state. Instead, Cretan merely alleges that PAWC supplies the Township's residents and fire hydrants with water

---

[4] We acknowledge, but do not find it necessary to address, PAWC's arguments that Cretan failed to explicitly allege that it is a state actor in the amended complaint or that another court in this district held that it is not a state actor in a footnote. *See Scott v. Ross*, No. 3:16-CV-0342, 2016 WL 865206, at * 2, n. 3 (M.D. Pa. Mar. 7, 2016).

pursuant to a contractual duty, which is consistent with furnishing utility services in the regular course of business. *Cf. Jackson,* 419 U.S. at 352. Cretan fares no better under the second test. Cretan alleges that PAWC had a contract with the Township and then negligently failed in its performance of that contractual duty, to Cretan's detriment. The alleged deprivation did not result from PAWC's exercise of a right or privilege having its source in state authority, and its conduct is not fairly described as coming from the state. Merely providing utilities is not an exercise of state power. The allegations are entirely dissimilar to cases where a private actor has been found to be a state actor under the second test, such as where there is either joint participation or conspiracy. *Adickes*, 398 U.S. at 152; *Lugar*, 457 U.S. at 942. Cretan's claims, however, sound in negligence as alleged in Count IV. Since the mere performance of a contract does not transform a private actor intro a state actor, it follows that negligence in the performance of a contractual duty similarly would not constitute state action. Lastly, and relatedly, the actions or inactions of PAWC as alleged cannot be fairly attributed to the state. There must be a sufficiently close nexus between the state and the challenged action, and here, Cretan merely alleges negligence in carrying out a contractual duty, which does not rise to the level of "interdependence" required under the third broad test, as occurred in *Burton* and *Brentwood Academy*. *Burton*, 365 U.S. 715 (1961); *Brentwood*, 531 U.S. 288 (2001).

Moreover, the Supreme Court considered utility companies, like PAWC, specifically in *Jackson*, 419 U.S. 345. The Supreme Court suggested that when a utility company exercises power "traditionally associated with sovereignty," like eminent domain, state action may be present. *Jackson*, 419 U.S. at 352. Mere business activities such as "the furnishing of utility services," however, are not state functions. *Id.* at 353. Here, we find that winterizing fire hydrants falls under the category of a mere business activity rather than a power traditionally associated with sovereignty. Thus, as alleged, PAWC is not a state actor for purposes of Section 1983.

### B. Supplemental Jurisdiction over the State Law Negligence Claim

In addition to federal claims, Cretan is asserting a state law negligence claim which would fall within the court's supplemental jurisdiction. Whether to exercise supplemental jurisdiction is within the discretion of the court. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173

14

(1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)).  The
Third Circuit has held that "where the claim over which the district court has
original jurisdiction is dismissed before trial, the district court must decline to
decide the pendent state claims unless considerations of judicial economy,
convenience, and fairness to the parties provide an affirmative justification for
doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of
West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

This case presents a unique circumstance.  While we herein dismiss Cretan's
federal claims against PAWC, the same federal claims remain against the
Township.  Further, Cretan alleges negligence in Count IV against both the
Township and PAWC, based on the same nucleus of operative facts.  The
Township did not move to dismiss, instead it answered the amended complaint,
and PAWC argued only that we decline supplemental jurisdiction over the claim.
Here, because the negligence claim against the Township will continue at this
procedural juncture, it would not be in the interest of judicial economy,
convenience, or fairness to the litigants to dismiss the negligence claim against
PAWC, only for the claim to be refiled in state court causing parallel litigation
over the same set of facts.

Accordingly, we will exercise supplemental jurisdiction over Cretan's
negligence claim against PAWC.

15

## V.  Amendment.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  "Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).  "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id.* (quoting *in re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007)).  Thus, in determining whether an amendment would be futile, we apply the same standard as we apply in determining whether a complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *Id.*  "In other words, '[t]he District Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff.'" *Id.* (quoting *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007)).

While Cretan amended his complaint, (*doc. 4*), it was prior to PAWC moving to dismiss and the Township answering.  Because we cannot say that amendment is futile, we find that granting Cretan leave to amend to be appropriate at this juncture.

## VI.  Conclusion.

Based on the foregoing, we will grant in part and deny in part PAWC's

motion to dismiss. *Doc. 22*.  An appropriate order follows.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge